## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTONIO JAMES HAWLEY,** | : | **No. 3:25-CV-0728** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **BOBBI JO SALAMON, *et al.*,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Antonio James Hawley initiated the above-captioned *pro se* action under 42 U.S.C. § 1983,[1] alleging constitutional violations by SCI Rockview officials and medical personnel.  The court will dismiss in part Hawley's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## I.    BACKGROUND

This is Hawley's third civil rights lawsuit filed in this district.  See generally Hawley v. Powell, No. 3:17-cv-02082 (M.D. Pa.); Hawley v. Salamon, No. 3:23-cv-01434 (M.D. Pa.).  In the instant case, Hawley asserts multiple claims (some related, some not) regarding alleged events at SCI Rockview in 2023 and 2024. Hawley is currently incarcerated at SCI Mahanoy.  (See Doc. 1 at p. 22).

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

Hawley first alleges that sometime in early May 2024, he was subjected to excessive force by two corrections officers: Fye and Jenks. (See id. ¶¶ 13-19). He claims that Fye and Jenks "violently pulled" his right hand while it was handcuffed, tightening and "yanking" the handcuff in an aggressive manner. (Id. ¶¶ 17, 19). According to Hawley, the officers contemporaneously discussed breaking his hand so that he could not grieve the incident or file a civil lawsuit about it. (Id. ¶ 18). He further alleges that there was no reason for these actions, as he "was not resisting," "misbehaving," or being "disruptive." (Id. ¶ 21). He asserts that he suffered nerve damage, bruising, and scarring on his right hand from the incident. (Id. ¶ 100).

Hawley recounts that, after the incident, he submitted a sick-call slip and was taken to the medical department the following day, where a nurse ordered an X-ray and prescribed ibuprofen. (Id. ¶¶ 33-34). He received the X-ray on May 6, 2024. (Id. ¶ 35). On May 12, he sent a request slip to Elaine Coffman, inquiring about the results of the X-ray, but claims that he did not receive a response from her. (Id. ¶ 36).

In a different section of his complaint, Hawley alleges that, from mid-May to early June 2024, several corrections officers repeatedly denied him meals. (Id. ¶¶ 66-90). He avers that corrections officers Sharrow, Michael, and Willis Holden frequently withheld meals from him while he was in the RHU, mainly during

breakfast and lunch service. (Id. ¶¶ 66, 68, 71-73, 80, 81). According to Hawley, the officers were acting in retaliation for Hawley filing grievance number 1085678 and an abuse report about the excessive force incident involving Fye and Jenks. (Id. ¶ 67). He claims that the officers would falsify the meal service records, marking that Hawley had "refused" the meal when it really had been denied. (Id. ¶¶ 84-85).

In a related issue, Hawley maintains that he was provided deficient medical care during this time. He alleges that on May 19, 2024, he put in a sick call regarding numbness and tingling in his right hand (from the handcuff incident) and requesting a weight check because he was being denied meals. (Id. ¶ 37). Hawley was seen by Nurse Bitner on May 22. (Id. ¶ 38). He claims that she told him that his B.M.I. was "fine," but Hawley challenged the efficacy of relying on B.M.I., so Nurse Bitner told him that she would put him on a 60-day weight watch. (Id. ¶¶ 39-41). Hawley further alleges that Nurse Bitner told him that Wellpath (the prison's medical contractor) does not get involved with inmate-abuse allegations and that it was "above [her] pay grade." (Id. ¶ 42). Hawley claims that he asked for a "full blood analysis" and Nurse Bitner told him that she would order it. (Id. ¶¶ 46-47). However, he alleges that he never received the bloodwork or weight-watch checkups. (Id. ¶ 49).

In an unrelated claim, Hawley asserts that on September 16, 2023, he notified Nurse Melissa that he had "passed out and cut his head" after feeling dizzy and being denied sick calls by unspecified RHU officers. (Id. ¶ 52). Nurse Melissa weighed Hawley (resulting in a weight of 152 pounds) and told him she would put in a sick-call request for him. (Id. ¶ 53). The next day, Nurse Melissa returned and filed the sick call, as promised. (Id. ¶ 54).

Nurse Bitner responded to the sick call on September 18. (Id. ¶ 55). She told Hawley she would order an EKG and blood testing. (Id.) On September 21, Hawley received the EKG and blood testing. (Id. ¶ 56). On October 2, he put in yet another sick call. (Id. ¶ 57). On October 4, Hawley alleges that Nurse Bitner responded to the sick call and told him "Look we don't get paid for this" and asked "[W]hat the f*ck do you want now?" (Id. ¶ 58). According to Hawley, he told Nurse Bitner that he was feeling dizzy and weak, that he was on medication that increased his hunger, and inquired about "what happen[ed]" with the last sick call. (Id. ¶ 59). Hawley alleges that Nurse Bitner responded, "You got the f*cking EKG didn't you!!!" and then walked off. (Id. ¶ 60). On October 6, 2023, he received another weight check that read 149.4 pounds. (Id. ¶ 61). He asserts that he weighed 180 to 198 pounds when he was "on the street" and 174 to 178 pounds at SCI Camp Hill, but at SCI Rockview his weight was in the 140- to 154-

pound range. (Id. ¶ 62). Hawley further contends that he did not receive notice of any diagnosis. (Id. ¶ 63).

In a final unrelated incident, Hawley alleges that on June 2, 2024, Corrections Officer Baylor—a "known homosexual"—sexually harassed him by stating to Hawley, "So you['re] a grower not a shower [sic] huh? Sure you don't want to show us your true size?" and winking. (Id. ¶ 93). Hawley further alleges that Sharrow stated, "Drop the lawsuit or this is going to get worse," (id. ¶ 94), and that Michael called him a "f*cking retard," (id. ¶ 91).

Hawley names seventeen defendants: Corrections Officers Fye, Jenks, Baylor, Sharrow, Michael, Holden, and McIntyre; Nurse Melissa, Nurse Bitner, Elaine Coffman, Lieutenant Vogt, Major Vangorder, Major Hoover, Superintendent[2] Bobbi Jo Salamon, Deputy Superintendent of Centralized Services Michael Rowe, Deputy Superintendent of Facility Management Woodring, and Unit Manager Cris Miller. (See Doc. 1 ¶¶ 2-10). He seeks compensatory and punitive damages, as well as injunctive relief in the form of "outside medical attention" for his right hand. (Id. ¶¶ 101, 103).[3]

---

[2] Hawley labels the head of SCI Rockview as "Warden Bobbi Jo Salamon," but the Pennsylvania Department of Corrections uses the term "Superintendent" rather than "Warden." See PA. DEP'T OF CORR., SCI ROCKVIEW, https://www.pa.gov/agencies/cor/state-prisons/sci-rockview (last visited July 28, 2025).

[3] Hawley further requests that criminal charges be filed against Fye and Jenks. (Id. ¶ 102). However, such relief is not available as part of a Section 1983 lawsuit. See United States ex rel. Savage v. Arnold, 403 F. Supp. 172, 174 & n.2 (E.D. Pa. 1975) ("[C]riminal statutes can only

## II.   STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or employees. See 28 U.S.C. § 1915A(a).  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]" Id. § 1915A(b)(1).  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).  See Grayson v. Mayview State Hosp., 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); O'Brien v. U.S. Fed. Gov't, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); cf. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to

---

be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions.  It has been repeatedly held that the Executive Branch through the Justice Department and U.S. Attorneys is charged with enforcement of federal criminal law and in this area has broad discretion in determ[in]ing whether or not to prosecute. In the exercise of such discretion U.S. Attorneys are immune from control or interference through mandamus or otherwise by private citizens or by courts." (quoting Bass Angler Sportsmen Soc. v. U.S. Steel Corp., 324 F. Supp. 412, 415 (D. Ala.), aff'd, 447 F.2d 1304 (5th Cir. 1971))); see also Wheeler v. Ulisny, 482 F. App'x 665, 669 (3d Cir. 2012) (nonprecedential) ("[A] private citizen cannot file a criminal complaint in court nor is there a federal right to require the Government to initiate criminal proceedings."); Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); Kennan v. McGrath, 328 F.2d 610, 611 (1st Cir. 1964).

offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>see</u> <u>Nami v. Fauver</u>, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. <u>Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010) (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. <u>See</u> <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679). Finally, the court must review the presumed-

truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Hawley proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se* litigant, like Hawley, is incarcerated. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.   DISCUSSION

Before addressing the sufficiency of Hawley's complaint, the court must identify the claimed constitutional violations. See Albright v. Oliver, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."); Graham v. Connor, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires "identifying the specific constitutional right allegedly infringed by the challenged" conduct).

Hawley appears to assert the following claims: (1) Eighth Amendment excessive force, state-law assault, and state-law battery against Fye and Jenks;

(2) Eighth Amendment deliberate indifference to serious medical needs and state-law medical malpractice against Coffman, Nurse Melissa, and Nurse Bitner; (3) civil conspiracy against Coffman, Nurse Melissa, and Nurse Bitner; (4) Eighth Amendment conditions of confinement against Sharrow, Michael, Holden, Fye, McIntyre, and Lt. Vogt; (5) First Amendment retaliation against Fye, Jenks, Sharrow, Michael, Holden, and McIntyre; and (6) an unconstitutional policy claim against Superintendent Salamon, Major Vangorder, Major Hoover, Deputy Superintendent Rowe, Deputy Superintendent Woodring, and Unit Manager Miller. Many of Hawley's allegations fail to state a claim upon which relief may be granted. The court will review the pleading deficiencies in turn.

## A.    Medical Care Claims

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment" to incarcerated individuals. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must show that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff." Durham v. Kelley, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). A serious medical need is "one that has been diagnosed by a

physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, and denial of reasonable requests for treatment resulting in unnecessary suffering or risk of injury. <u>See</u> <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting <u>Lanzaro</u>, 834 F.2d at 346). Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976) (citation omitted). Claims sounding in mere medical negligence will not suffice. <u>Rouse</u>, 182 F.3d at 197.

Hawley's allegations do not state a claim of deliberate indifference to serious medical needs against any targeted Defendant. As to Elaine Coffman, Hawley alleges only that she oversees the medical staff and did not respond to a request slip he sent to her asking about X-ray results. This assertion is plainly insufficient to establish deliberate indifference to a serious medical need or harm therefrom. Hawley has not alleged that Coffman played any role in his medical care, knew about a serious medical need (beyond his single request for a test

result), was deliberately indifferent to a serious medical need, or caused him physical harm by being deliberately indifferent.

As to Nurse Melissa, Hawley claims that in September 2023, he notified her about passing out and cutting his head. Nurse Melissa weighed Hawley and promised to put in a sick call for him, which promise she fulfilled. None of these allegations comes close to stating a claim of deliberate indifference to serious medical needs.

Most of Hawley's allegations target Nurse Bitner. Although Nurse Bitner's alleged demeanor and comments certainly could be deemed unprofessional, none of Hawley's claims regarding her purported conduct rise to the level of an Eighth Amendment violation.

In the 2023 episode, Hawley alleges that Nurse Bitner responded to a sick call and told Hawley that she would order an EKG and blood testing for him. Both tests were ordered and administered. Hawley then claims that, in response to another sick call he placed concerning a minor cut on his head and "feeling dizzy," Nurse Bitner responded by saying "Look we don't get paid for this, you don't need anything so what the f*ck do you want now?" (Doc. 1 ¶ 58). Nurse Bitner allegedly further responded to a question from Hawley about his previous sick call by saying, "You got the f*cking EKG didn't you!!!" and then walking off. (Id. ¶ 60).

11

While Nurse Bitner's alleged attitude and language could be considered offensive, they do not meet the high bar of stating a constitutional violation.  It is well settled that conduct like verbal harassment, taunting, and use of profanity, without any injury or threat thereof, is insufficient to implicate a constitutional infringement.  See Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) (explaining that "verbal harassment does not give rise to a constitutional violation enforceable under § 1983"); see also Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) (collecting cases); Manning v. Flock, No. 1:11-cv-0293, 2012 WL 1078227, at *12 (M.D. Pa. Mar. 30, 2012) (collecting cases); Graham v. Main, No. 10-cv-5027(SRC), 2011 WL 2412998, at *24-25 (D.N.J. June 9, 2011) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner.") (collecting cases); Mohamed v. Aviles, No. 06-cv-4794 (FSH), 2007 WL 923506, at *5 (D.N.J. Mar. 26, 2007) (collecting cases).  Hawley's allegations about Nurse Bitner's conduct in 2023 simply do not implicate an Eighth Amendment violation with respect to medical care, as they do not establish a serious medical need, deliberate indifference thereto, or resultant harm.

Hawley additionally claims that in May 2024, he was seen by Nurse Bitner on a single occasion for a sick call related to weight loss and his injured right

hand.  He alleges that Nurse Bitner refused to report his allegations regarding inmate abuse that he included in his sick-call request.  However, failure to report abuse allegations contained in a sick-call request is irrelevant to the question of whether Nurse Bitner was deliberately indifferent to serious medical needs.

Hawley also alleges that Nurse Bitner told him that she would put him on a 60-day weight watch and order a "full blood analysis" for him, but that such screening was never provided.  These allegations, too, fail to constitute Eighth Amendment medical indifference.  According to Hawley, Nurse Bitner listened to his complaints and agreed to order appropriate testing but—for some reason that is not explained or alleged—that testing was not performed.  The reason the blood testing or weight checks were not performed could range from accidental or inadvertent failure to order the testing, to failure by other medical providers to perform their duties, to intentional malfeasance by Nurse Bitner.  Furthermore, Hawley has not alleged that he suffered harm from Nurse Bitner's conduct on this single visit.  Accordingly, Hawley has not proffered any plausible allegations of deliberate indifference to serious medical needs by Nurse Bitner, and thus his claim regarding the single May 2024 visit likewise fails to state a constitutional violation.[4]

---

[4] Hawley's allegations against the medical personnel likewise fail to state a claim for state-law medical malpractice.  Medical negligence, or medical malpractice, "can broadly be defined as the unwarranted departure from generally accepted standards of medical practice resulting in

### B.    Civil Conspiracy

Through the headings of his complaint, Hawley appears to assert a claim of civil conspiracy against the named medical personnel.  (See Doc. 1 at pp. 8-12). He invokes "§§ 1985 & or 1986," although his claims do not appear to implicate either section of Title 42 of the United States Code, as his allegations do not involve racial or class-based discrimination.  See Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) (explaining that Section 1985 conspiracy involves racial or otherwise class-based invidious discrimination).

It is possible that Hawley is attempting to assert a conspiracy to violate his rights under Section 1983.  If so, he has not stated such a claim.  That is because Hawley simply uses the term "conspiracy" in his heading and does not plead facts showing a civil conspiracy.

To state a claim for conspiracy, a plaintiff must do more than recite talismanic phrases like "conspire" and "act in concert."  See Jutrowski v.

---

injury to a patient[.]"  Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003) (citation omitted).  To state a medical malpractice claim under Pennsylvania law, a plaintiff must plausibly allege "a duty owed by the [medical professional] to the patient, a breach of that duty by the [medical professional], that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm."  Id. (quoting Hightower-Warren v. Silk, 698 A.2d 52, 54 (Pa. 1997)).  Hawley's allegations do not set forth a standard of care, plausibly state that any Defendant's alleged conduct breached their duty of care, that said breach proximately caused him physical harm, or that he suffered damages as a direct result of that harm.  Most notably, while some of Hawley's allegations may demonstrate less-than-perfect performance by prison medical staff, none establish that Hawley suffered harm and physical damages as a proximate result of the allegedly sub-par care.

Township of Riverdale, 904 F.3d 280, 295 (3d Cir. 2018) (explaining that, to state a civil conspiracy claim, a plaintiff must demonstrate that defendants "somehow reached an understanding to deny [the plaintiff] his rights" (alteration in original)); Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (citing Kalmanovitz v. G. Heileman Brewing Co., 595 F. Supp. 1385, 1400 (D. Del. 1984), aff'd 769 F.2d 152 (3d Cir. 1985) ("It is a longstanding rule in the Third Circuit that a mere general allegation ... [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]." (citing Black & Yates, Inc. v. Mahogany Ass'n, 129 F.2d 227, 231-32 (3d Cir. 1941)))); Stankowski v. Farley, 251 F. App'x 743, 748 (3d Cir. 2007) (nonprecedential) (finding that "conclusory allegation" that defendants "conspired" against him fails to state a claim for civil conspiracy). Hawley's conclusory assertion of a civil conspiracy to violate his Eighth Amendment medical rights is plainly insufficient to plausibly state a Section 1983 civil conspiracy claim.

Hawley's conspiracy claim fails for an additional reason. As noted above, Hawley has not plausibly alleged the violation of his Eighth Amendment rights with respect to medical care. Without identifying an underlying constitutional violation, he likewise fails to state a Section 1983 conspiracy claim. See Harvard v. Cesnalis, 973 F.3d 190, 207 (3d Cir. 2020); Clayworth v. Luzerne County, 513

F. App'x 134, 138 (3d Cir. 2013) (nonprecedential) ("Thus, because [plaintiff]
failed to establish an underlying violation of his constitutional rights, his [civil
rights] conspiracy claim also fails.") (citing <u>Parkway Garage, Inc. v. City of
Philadelphia</u>, 5 F.3d 685, 700 (3d Cir. 1993), <u>abrogated on other grounds by
United Artists Theatre Cir., Inc. v. Township of Warrington</u>, 316 F.3d 392 (3d Cir.
2003)).

### C.   Retaliation

Hawley appears to assert several claims of First Amendment retaliation.
As best as the court can discern, he first alleges that Fye and Jenks used
excessive force and injured his right hand in retaliation for a prior lawsuit he filed
against them.  (<u>See</u> Doc. 1 ¶ 13); <u>Hawley v. Salamon</u>, No. 3:23-cv-01434 (M.D.
Pa.).  He also claims that he was denied meals by several corrections officers for
filing grievance number 1085678 and an abuse allegation concerning Fye's and
Jenks' actions.  (<u>See</u> Doc. 1 ¶ 67).

Although a prisoner's constitutional rights are necessarily circumscribed, an
inmate still retains First Amendment protections when they are "not inconsistent"
with prisoner status or with the "legitimate penological objectives of the
corrections system." <u>Wisniewski v. Fisher</u>, 857 F.3d 152, 156 (3d Cir. 2017)
(quoting <u>Newman v. Beard</u>, 617 F.3d 775, 781 (3d Cir. 2010)).  To state a First
Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was

engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.  Id. (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quoting Rauser, 241 F.3d at 333).

Hawley's retaliation claim against Fye and Jenks alleging injury to his right hand for filing a previous lawsuit against them can proceed past Section 1915A(a) screening, as Hawley has plausibly alleged all three retaliation elements.  Although Hawley originally named a corrections officer "Fry" in his earlier lawsuit, see Hawley v. Salamon, No. 3:23-cv-01434, Doc. 40 at 6 (M.D. Pa. Apr. 16, 2024) (amended complaint), that corrections officer's name was later changed to "Fye" in a subsequent amended pleading, see id., Doc. 80 at 2 (M.D. Pa. Oct. 4, 2024) (second amended complaint).

Hawley's claim of retaliation involving denial of meals against Sharrow, Michael, Holden, Fye, and McIntyre is insufficient for several reasons.  First, Hawley fails to establish causation for most Defendants.  Hawley alleges, in conclusory fashion, that these officers denied meals to him in retaliation for filing a grievance and abuse allegation against Fye and Jenks.  It is well settled,

17

however, that causation cannot be inferred simply by asserting that a plaintiff pursued some protected activity (like a lawsuit or prison grievance) against a defendant or nonparty prison official who is not the alleged perpetrator of the retaliatory adverse action. See, e.g., Nunez v. Wetzel, No. 1:21-cv-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (collecting cases); Kendrick v. Hann, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); Murray v. Smithbower, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021); Horan v. Collins, No. 1:13-cv-00140, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016); Victor v. Lawler, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); Evans v. Rozum, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original)); Royster v. Beard, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), aff'd 308 F. App'x 576 (3d Cir. 2009) (nonprecedential) (agreeing with district court analysis).  Such general allegations fail to establish or even infer knowledge of the protected conduct, and they likewise fail to show why a defendant would take the alleged adverse action.  As such, Hawley has failed to plausibly allege causation—the

18

third element of a retaliation claim—against defendants Sharrow, Michael, and
Holden.

Hawley also alleges that, on a single occasion, Fye denied him dinner and
McIntyre (who is likewise named as a defendant in case number 3:23-cv-01434)
denied him breakfast.  (See Doc. 1 ¶¶ 66, 78).  Multiple courts, however, have
repeatedly held that the denial of a single meal (or several nonconsecutive
meals) does not rise above the *de minimis* level to constitute an adverse action
for a retaliation claim.  See Romero v. Lann, 305 F. App'x 242, 243 (5th Cir.
2008) (nonprecedential) (denial of two meals over eight months was *de minimis*
for retaliation claim); Ramey v. Marsh, No. 4:21-cv-01018, 2022 WL 363854, at
*3 (M.D. Pa. Feb. 7, 2022) (withholding single meal does not qualify as adverse
action for retaliation claim); Coit v. Luther, No. 1:19-cv-02036, 2021 WL 5792697,
at *10 (M.D. Pa. Dec. 7, 2021) (explaining that "occasional denial of meals does
not constitute sufficient adverse action" for retaliation claim and thus denial of
one meal was *de minimis*); Daughtry v. Kauffman, No. 3:17-cv-0442, 2021 WL
4502256, at *13 (M.D. Pa. Sep. 30, 2021) (denial of two meals five days apart
was *de minimis* and thus not an adverse action for First Amendment retaliation
claim); Sears v. Mooney, No. 1:17-cv-50, 2019 WL 6726839, at *8 (M.D. Pa.
Dec. 11, 2019) (denial of one food tray did not rise to level of adverse action);

Frazier v. Daniels, No. 09-cv-3612, 2010 WL 2040763, at *11 (E.D. Pa. May 20, 2010) (denial of two meals did not constitute adverse action for retaliation claim).

In sum, Hawley has failed to plausibly allege causation for his meal-related retaliation claims against Sharrow, Michael, and Holden. And he has failed to plausibly allege an adverse action for his meal-related retaliation claims against Fye and McIntyre. These claims, therefore, will be dismissed pursuant to Section 1915A(b)(1) for failure to state a claim.

### D.    Conditions of Confinement

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort." Thomas v. Tice, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Nevertheless, the state cannot subject an inmate to cruel and unusual punishment or inhumane treatment, such as deprivation of "basic human needs" like "food, clothing, shelter, medical care, and reasonable safety[.]" Helling v. McKinney, 509 U.S. 25, 32 (1993) (citation omitted).

To state an Eighth Amendment conditions-of-confinement claim, a plaintiff must plausibly plead both objective and subjective elements. See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015). Objectively, the prisoner must demonstrate that "the prison official deprived the prisoner of the minimal

civilized measure of life's necessities," often referred to as a "sufficiently serious" deprivation.  Id. (citing Farmer v. Brennan, 511 U.S. 825, 843 (1994); Wilson v. Seiter, 501 U.S. 294, 297 (1991)).  "The benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they are 'incarcerated under conditions posing a substantial risk of serious harm.'"  Clark v. Coupe, 55 F.4th 167, 179 (3d Cir. 2023) (quoting Farmer, 511 U.S. at 834).

Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety."  Chavarriaga, 806 F.3d at 226 (citing Farmer, 511 U.S. at 834).  Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm."  Id. at 227 (citing Farmer, 511 U.S. at 842).

Hawley appears to assert a conditions-of-confinement claim against Sharrow, Michael, Holden, Fye, McIntyre, and Lt. Vogt, alleging that they intentionally denied him multiple meals and thus were deliberately indifferent to his health.  Hawley's allegations against Sharrow, Michael, and Holden are sufficient to state an Eighth Amendment conditions-of-confinement claim.  He asserts that these officials intentionally denied him multiple meals over the course of several weeks, resulting in weight loss.

His conditions-of-confinement claims against Fye, McIntyre, and Lt. Vogt fall short. As to Fye and McIntyre, the withholding of a single meal does not implicate a sufficiently serious deprivation. See, e.g., Zanders v. Ferko, 439 F. App'x 158, 160 (3d Cir. 2011) (nonprecedential) (deprivation of 3 meals over 2 days not a constitutional violation, but denial of 16 meals over 23 days may implicate Eighth Amendment); Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir. 2002) (nutritionally inadequate restricted diet for 14 consecutive days may violate constitution); Reed v. McBride, 178 F.3d 849, 853-54 (7th Cir. 1999) (denial of food "on many occasions for three to five days at a time" sufficient to state Eighth Amendment claim); Talib v. Gilley, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (denial of one out of every nine meals for five-month span likely not a constitutional violation); Robles v. Coughlin, 725 F.2d 12, 13, 15-16 (2d Cir. 1983) (denial of all meals for 12 days, 3 of which were consecutive, over 53-day span implicated Eighth Amendment); Smith v. Wilson, No. 3:13-cv-771, 2014 WL 4626664, at *1, *5-6 (M.D. Pa. June 26, 2014) (denial of 15 meals over 27 days sufficient to state an Eighth Amendment claim), report and recommendation rejected in part on different grounds, No. 3:13-cv-771, 2014 WL 4630713 (M.D. Pa. Sept. 15, 2014). Nor does it establish that Fye or McIntyre were deliberately indifferent to Hawley's health or safety, as missing a single meal is not a sufficiently serious risk to an inmate's health.

As to Lt. Vogt, Hawley alleges that when he reported the deprivation of meals, Lt. Vogt provided explanations for the meal denials. Lt. Vogt allegedly responded that Hawley "didn't have a light on" or that the light was "covered," or that he was marked as refusing the meal. (Doc. 1 ¶ 84). According to Hawley, Lt. Vogt would also "laugh, snicker, or giggle" when Hawley would complain to him about the purportedly denied meals. (Id. ¶ 87). These allegations, however, do not implicate personal involvement in the alleged constitutional deprivation and are thus insufficient to state a Section 1983 claim.[5] See Dooley, 957 F.3d at 374 (requiring personal involvement in alleged misconduct to state a constitutional tort).

In sum, Hawley's conditions-of-confinement claim may go forward against defendants Sharrow, Micheal, and Holden. The claim will be dismissed as to defendants Fye, McIntyre, and Lt. Vogt.

### E.    Unconstitutional Policy

Hawley sues multiple high-level prison officials (Superintendent Salamon, Major Vangorder, Major Hoover, Deputy Superintendent Rowe, Deputy Superintendent Woodring, and Unit Manager Miller), claiming that they enacted or enforced an unconstitutional policy with respect to meal service in the RHU.

---

[5] Hawley later alleges that Lt. Vogt "encouraged" and "instigated" the denial of meals, (Doc. 1 ¶ 88), but this conclusory allegation, which is unsupported by plausible facts, is likewise insufficient to state personal involvement in an alleged constitutional violation.

Hawley alleges that this policy requires RHU inmates to: receive their meals through the "feeding/handcuffing" aperture in the cell door; prior to staff opening the aperture, the inmates must turn on the light in their cell and move to the rear of the cell with their hands visible to determine whether they have any objects in their hands; if inmates do not comply with these requirements, the aperture may not be opened for the inmate to receive their meal service.  (Doc. 1 ¶ 88).

Hawley has not explained how this policy is unconstitutional or unlawful. He describes a food service policy that appears to have sound footing in both staff and inmate safety in the Restricted Housing Unit.  His assertion that the policy (purportedly contained in the RHU handbook) "is corrupt, illegal, and goes against DOC policy," (id. ¶ 89), is conclusory and nonsensical.  Consequently, the unconstitutional policy claim against Superintendent Salamon, Major Vangorder, Major Hoover, Deputy Superintendent Rowe, Deputy Superintendent Woodring, and Unit Manager Miller will be dismissed for failure to state a claim.

### F.    PREA Incident

In a final, unrelated claim, Hawley alleges that on June 2, 2024, Corrections Officer Baylor—a "known homosexual"—sexually harassed him by stating to Hawley, "So you['re] a grower not a shower huh?  Sure you don't want to show us your true size?" and winking.  Hawley further alleges that Sharrow

24

stated, "Drop the lawsuit or this is going to get worse," and that Michael called him a "f*cking retard."

None of these allegations, alone or considered together, state a viable Section 1983 claim. As noted above, verbal harassment or offensive language, while unprofessional, does not rise to the level of a constitutional violation. And although Hawley lists First Amendment retaliation in his heading, none of his allegations state protected conduct, an adverse action, or causation.

Thus, nothing in this portion of Hawley's complaint could constitute an infringement of his constitutional rights. Accordingly, any claim Hawley is attempting to assert through the allegations in paragraphs 91 through 95 of his complaint will be dismissed for failure to state a claim upon which relief may be granted.

### G.    Official Capacity Claims

Hawley sues all prison-official Defendants in their individual and official capacities. However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity. Additionally, injunctive relief is only available from appropriate Defendants.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state. U.S. CONST. amend. XI; Idaho v. Coeur

d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1997); Hans v. Louisiana, 134 U.S. 1, 10 (1890).  This immunity from private suit extends to state agencies as well as state officials acting in their official capacity because such lawsuits are essentially civil actions "against the State itself."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.  See 42 PA. CONS. STAT. ANN. § 8521(b); Downey v. Pa. Dep't of Corr., 968 F.3d 299, 310 (3d Cir. 2020); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).  There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."  Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa., 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, Ex parte Young, 209 U.S. 123 (1908)).

Hawley's official capacity claims, to the extent they seek monetary damages, are barred by Eleventh Amendment sovereign immunity.  Insofar as Hawley requests prospective injunctive relief (*i.e.*, being provided outside medical care for his right hand), an official capacity claim could conceivably go forward, but only against an appropriate DOC official who could effectuate the injunctive

26

relief that Hawley requests in his lawsuit.  See Parkell v. Danberg, 833 F.3d 313,

332 (3d Cir. 2016) ("In seeking a prospective injunction against the

implementation of an unconstitutional state policy, [a plaintiff] is required to name

an official or officials who can appropriately respond to injunctive relief." (citation

and internal quotation marks omitted)); see also Gonzalez v. Feinerman, 663

F.3d 311, 315 (7th Cir. 2011) (per curiam) (explaining that proper defendant for

official capacity claim is the state official "responsible for ensuring that any

injunctive relief is carried out").

     Hawley is no longer incarcerated at SCI Rockview.  Thus, none of the

named Defendants could effectuate the injunctive relief Hawley is seeking.

Moreover, Hawley has not alleged an underlying Eighth Amendment medical

care violation.  Accordingly, all official capacity claims against the named

Defendants will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and (2).

### H.    Leave to Amend

     Generally, "plaintiffs who file complaints subject to dismissal under [the

Prison Litigation Reform Act of 1995] should receive leave to amend unless

amendment would be inequitable or futile." Grayson, 293 F.3d at 114.  Limited

leave to amend will be provided.  Hawley, if he desires, may file an amended

complaint in the event that he could allege additional facts to plausibly state

retaliation via denial of meals.

Leave to amend will be denied as to his other deficient claims, including his claims of an unconstitutional policy regarding RHU food service; medical indifference and medical malpractice against Nurse Melissa, Nurse Bitner, and Elaine Coffman; his official capacity claims regarding medical care; and the PREA incident set forth in paragraphs 91 through 95 of the complaint. These claims contain detailed factual allegations but do not—and cannot—implicate a constitutional violation.

If Hawley chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth his claims in short, concise, and plain statements, and in sequentially numbered paragraphs. He must address the pleading deficiencies identified in this Memorandum. His amended complaint should include any claims he wishes to pursue that have been deemed sufficiently alleged herein, but he may not include claims that are being dismissed with prejudice (or without leave to amend). Hawley must also sign the amended complaint and indicate the nature of the relief sought. Failure to comply with the foregoing pleading instructions may result in the summary striking or dismissal of any amended pleading.

If Hawley does not timely file an amended complaint, any claims dismissed without prejudice will automatically convert to dismissal with prejudice and this

case will proceed on the following claims: (1) individual capacity Eighth

Amendment excessive force, state-law assault, and state-law battery against Fye

and Jenks; (2) individual capacity Eighth Amendment conditions of confinement

against Sharrow, Michael, and Holden; and (3) individual capacity First

Amendment retaliation against Fye and Jenks.

## IV.    CONCLUSION

Based on the foregoing, the court will dismiss in part Hawley's complaint

pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief

may be granted.  Limited leave to amend will be granted.  An appropriate Order

follows.


Date: 7/29/25                          BY THE COURT:


                                       JUDGE JULIA K. MUNLEY
                                       United States District Court